UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WELLS FARGO BANK N.A., AS TRUSTEE,
FOR THE REGISTERED HOLDERS OF
JPMORGAN CHASE COMMERCIAL
MORTGAGE SECURITIES CORP.,
COMMERCIAL MORTGAGE
PASS-THROUGH CERTIFICATES,
SERIES 2004-C2, c/o C-III Asset
Management LLC,

           Plaintiff,

                       Case # 6:15-cv-06680-FPG-MWP

v.

                       DECISION AND ORDER

LLHC REALTY, LLC,

           Defendant.

## INTRODUCTION

Plaintiff Wells Fargo Bank N.A., as trustee for a commercial mortgage-backed security trust, filed this mortgage foreclosure action against Defendant LLHC Realty, LLC by and through the trust's special servicer, C-III Asset Management, LLC.

On October 14, 2016, Plaintiff moved for summary judgment under Federal Rule of Civil Procedure 56. ECF No. 34. Defendant responded in opposition on November 23, 2016, ECF Nos. 36–37, and Plaintiff replied on December 7, 2016, ECF No. 38. The Court issued an Order to Show Cause regarding diversity jurisdiction on October 27, 2017, ECF No. 45, followed by a November 28, 2017 Text Order permitting Plaintiff to engage in limited jurisdictional discovery regarding Defendant's citizenship as an LLC, ECF No. 48.

On April 16, 2018, Plaintiff filed its supplemental response to the October 27, 2017 Order, ECF Nos. 54, 56, along with its Motion to Compel and for Sanctions against Defendant, ECF No.

1

53. Defendant replied to the Motion to Compel and for Sanctions on May 9, 2018 and May 10, 2018. ECF Nos. 60, 62 (signed and notarized versions of ECF Nos. 58–59, 61). Plaintiff replied on May 16, 2018, ECF No. 63, and Defendant requested permission to file a sur-reply on May 17, 2018, ECF No. 64, which the Court granted via Text Order on May 18, 2018, ECF No. 65. Defendant then filed a sur-reply on May 22, 2018. ECF No. 67. In light of the cooperation-related difficulties evident from Plaintiff's supplemental response (and further alleged in Plaintiff's Motion to Compel and for Sanctions), the Court issued an additional Order to Show Cause on June 25, 2018 directing Plaintiff to adequately demonstrate the citizenship of two of Defendant's five members and reminding Defendant of the Court's expectation that it would comply with the limited inquiry. *See* ECF No. 71. Plaintiff filed its response to the June 25, 2018 Order on July 23, 2018. ECF No. 74.

For the reasons that follow, Plaintiff's Motion for Summary Judgment is GRANTED; Plaintiff's Motion to Compel is DENIED AS MOOT, but Plaintiff is entitled to its related expenses, including attorney's fees; and Plaintiff's Motion for Sanctions is DENIED.

## JURISDICTION

As a preliminary matter, the Court addresses the remaining questions regarding its subject-matter jurisdiction. The Court assumes the parties' familiarity with the jurisdiction-related inquiries, which have been summarized and progressively addressed in the Court's October 27, 2017 Order to Show Cause (ECF No. 45) and June 25, 2018 Order to Show Cause (ECF No. 71). Pursuant to the June 25, 2018 Order, Defendant was directed to supplement its Supplemental Memorandum of Law (ECF No. 56) to adequately demonstrate the respective citizenship of Andrew Costanza and Peter Luellen, two of the five members of Defendant. Defendant's July 23,

2018 response (ECF No. 74) resolves the matter and satisfies the Court that it has subject-matter jurisdiction over this case.

Defendant identifies Andrew Costanza as a citizen of New York and Peter Luellen as a citizen of New Mexico. *See* ECF No. 74-5, at 5–7. Indeed, Andrew Costanza's sworn declaration makes clear that he was a citizen of New York at the outset of this action—Andrew Costanza lived and worked in New York, owned property in New York, paid income taxes in New York, carried a driver's license issued by the State of New York, operated a vehicle registered in New York, and used banking and medical services in New York. *See* ECF No. 74-4, at 2–3. Moreover, Andrew Costanza was licensed to practice law in New York, he was registered to vote in New York, and his family, including his spouse, lived in New York. *See id.* As a result, the Court has no trouble concluding that Andrew Costanza was a citizen of New York.

The Court is also satisfied that, when this suit commenced, Peter Luellen was a citizen of New Mexico. At his deposition, Peter Luellen testified that he lived with his wife in New Mexico, owned property in New Mexico, paid taxes in New Mexico, carried a driver's license issued by the State of New Mexico, operated a business in New Mexico, was registered to vote in New Mexico, and owned vehicles registered in New Mexico. *See* ECF No. 74-1, at 14–26. Based on this information, the Court concludes that Peter Luellen was a citizen of New Mexico.

As described in the Court's July 25, 2018 Order, Plaintiff is a citizen of South Dakota, and Defendant's other three members are citizens of New York. *See* ECF No. 71. Taking Defendant's members in their entirety, four are citizens of New York, and the other is a citizen of New Mexico. Given that composition, Defendant is deemed to be a citizen of New York and New Mexico. *See, e.g.*, *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51–52 (2d Cir. 2000). Complete diversity therefore exists between the parties, and—as a result—the Court has subject-matter

jurisdiction over this case. *See* 28 U.S.C. § 1332(a). Accordingly, the Court proceeds to set forth the factual history and address the merits of the dispute.

## BACKGROUND[1]

On or about April 5, 2004, Hillside Burnham MHP, Inc. ("Original Borrower") obtained a loan in the original principal amount of $2,520,000.00 ("the Loan") from Union Capital Investments, LLC ("Original Lender") through the execution of the Consolidated Promissory Note ("the Note"). The Note was secured by the Mortgage and Security Agreement and Consolidation, Modification and Restatement Agreement ("the Mortgage"), executed on March 30, 2004, to be effective April 5, 2004, with a lien on premises located at 9091 Creed Road, Nunda, New York 14517; 113 Warsaw Boulevard, Silver Springs, New York 14550; and 13 Erie Street, Mount Morris, New York 14510 ("the Mortgaged Premises"), and a security interest in certain collateral therein (collectively, "the Mortgaged Property"). The Mortgage was recorded with the Clerk's Office of Livingston County, New York and the Clerk's Office of Wyoming County, New York on July 1, 2004. The Note was also secured by the Assignment of Leases and Rents ("the Lease Assignment"), which was dated April 5, 2004 and recorded with the Clerk's Office of Livingston County, New York and the Clerk's Office of Wyoming County, New York on July 1, 2004.

Original Lender assigned the Mortgage to Plaintiff through the Assignment of Mortgage and Security Agreement and Consolidation, Modification and Restatement Agreement ("the Mortgage Assignment"), dated May 20, 2004. The Mortgage Assignment was recorded with the Clerk's Office of Livingston County, New York on June 13, 2005 and the Clerk's Office of

---

[1] The following facts are drawn from the Local Rule 56(a) statement, affidavits, and documents submitted in connection with Plaintiff's Motion for Summary Judgment (ECF No. 34). As discussed *infra*, Defendant's response in opposition was both untimely and incomplete under the Local Rules—among other deficiencies, it lacks a statement of facts. In addition, Plaintiff's papers include its earlier Requests for Admission (ECF No. 34-14), which—having gone unanswered—are deemed admitted by Defendant. *See* Fed. R. Civ. P. 36(a)(3). Unless otherwise noted, the facts set forth are undisputed.

Wyoming County, New York on July 7, 2005. In addition, Original Lender assigned the Lease Assignment to Plaintiff through the Assignment of Lease Assignment dated November 12, 2007 and recorded with the Clerk's Office of Wyoming County, New York on February 27, 2008 ("the Wyoming Assignment of Lease Assignment"), and the Assignment of Lease Assignment dated September 20, 2007 and recorded with Clerk's Office of Livingston County, New York on January 28, 2008 ("the Livingston Assignment of Lease Assignment").[2]

Defendant assumed the Loan from Original Borrower on or about January 8, 2007 pursuant to the Assumption and Release Agreement ("the Assumption Agreement"), which Plaintiff recorded with the Clerk's Office of Wyoming County, New York and the Clerk's Office of Livingston County, New York on January 24, 2007. The Note required Defendant to make monthly payments of $14,072.03 to Plaintiff on the eleventh day of each month, starting on May 11, 2004 and continuing through April 11, 2014, at which point, "the entire outstanding principal balance . . . with all accrued but unpaid interest" was "due and payable in full." *See* ECF No. 34-2, at 2–3.

Defendant failed to pay the full amount due when the Loan matured on April 11, 2014. Section 2.1(a) of the Mortgage defines an "Event of Default" as Defendant's failure "to (i) make any payment under the Note when due, or (ii) timely make any regularly scheduled monthly deposit into a Reserve when due." *See* ECF No. 34-3, at 55. Accordingly, when Defendant failed to pay, Plaintiff declared the Loan in default and sought immediate payment of the amount due.

Section 3.1(c) of the Mortgage also provides that, in an Event of Default, Plaintiff may, "[w]ith or without taking possession of the Property, sue for or otherwise collect the Rents and Profits, including those past due and unpaid, and apply the same[] . . . upon any indebtedness

---

[2] In its opposition papers, Defendant briefly notes that the portion of the Mortgage Assignment entitled "Assignment of Leases and Rents" "is clearly crossed out as being excised from the document." ECF No. 37, at 5 (suggesting that no attempt was made to assign the Lease Assignment to Plaintiff). But Defendant ignores the Wyoming and Livingston Assignments of Lease Assignment, which were simply executed as separate documents. *See* ECF No. 34-6.

5

secured hereby." *See id.* at 58. Likewise, the Lease Assignment states that, upon an Event of Default (as defined in the Mortgage), Plaintiff "may thereafter, without taking possession of the Property, demand, collect (by suit or otherwise), receive and give valid and sufficient receipts for any and all of the Rents or take possession of the Leases." *See* ECF No. 34-4, at 4. Despite Plaintiff's post-default demand, Defendant has failed to remit net rents from the Mortgaged Premises.

Additionally, Section 1.5 of the Mortgage[3] instructs that Defendant "shall pay or cause to be paid[] . . . all taxes and assessments which are or may become a lien on the Property or which are assessed against or imposed upon the Property." *See* ECF No. 34-3, at 18. Again, notwithstanding Plaintiff's post-default demand, Defendant has failed to pay taxes on the Mortgaged Premises.

Section 3.1 of the Mortgage states that, upon default, the Mortgage is subject to foreclosure. *Id.* at 57. Section 3.1(e) provides that Plaintiff may

> [i]mmediately commence an action to foreclose th[e] Mortgage or to specifically enforce its provisions or any of the indebtedness secured hereby, pursuant to the applicable statutes in such case and sell the Property or cause the Property to be sold in accordance with the requirements and procedures provided by said statute in a single parcel or in several parcels.

*See id.* at 59. To that end, Section 3.1(f) allows Plaintiff to pursue judicial remedies "to foreclose the liens and security interests of this Mortgage as against all or any part of the Property, and to have all or any part of the Property sold under the judgment or decree of a court of competent jurisdiction." *See id.*

---

[3] Plaintiff cites Section 1.1(f) of the Mortgage, but the operative language actually appears in Section 1.5. *Compare* ECF No. 34-4, at 18 (addressing the payment of taxes), *with id.* at 8 (addressing the defense of usury).

6

## DISCUSSION

**I.  Motion for Summary Judgment**

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether to grant summary judgment, the Court "must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *See, e.g.*, *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). The movant must demonstrate both the absence of any genuine factual dispute and its entitlement to judgment as a matter of law, even if the summary judgment motion goes unopposed. *See id.* However, where "a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be deemed "undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2); *see also* Fed. R. Civ. P. 56(e)(3) (further providing that a court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it").

Under New York law, a plaintiff in a mortgage foreclosure action demonstrates its *prima facie* entitlement to summary judgment where it "submits the mortgage, the unpaid note, and evidence of the default." *Gustavia Home, LLC v. Bent*, No. 16-CV-4007 (JFB) (SIL), 2018 WL 3491692, at *4 (E.D.N.Y. July 20, 2018); *accord Gustavia Home, LLC v. Rutty*, 720 F. App'x 27, 28 (2d Cir. 2017) (summary order). Sufficient evidence of default may consist of "an affidavit of a person with knowledge[] or a complaint verified by a person with knowledge." *See Bent*, 2018 WL 3491692, at *5 (quoting *Fortress Credit Corp. v. Alarm One, Inc.*, 511 F. Supp. 2d 367, 371 (S.D.N.Y. 2007)). Once the plaintiff makes out its *prima facie* case, the burden shifts to the defendant to prove any affirmative defenses. *See, e.g.*, *E. Sav. Bank, FSB v. Bright*, No. 11-cv-1721 (ENV)(MDG), 2012 WL 2674668, at *3 (E.D.N.Y. July 5, 2012).

7

### A. Plaintiff's Prima Facie Case

Here, Plaintiff has provided uncontroverted evidence of default. Plaintiff has submitted (1) a copy of the Mortgage, ECF No. 34-3; (2) a copy of the Note, ECF No. 34-2; and (3) the Affidavit of Todd Bragg, the servicing officer responsible for the Loan, who has direct knowledge of Defendant's failure to pay, *see* ECF No. 35. In addition, Plaintiff includes its earlier Requests for Admission, which—having gone unanswered—represent Defendant's acknowledged validity of the Mortgage, Note, Assumption Agreement, Mortgage Assignment, and related documents, along with its acknowledged failure to make the payment required. *See* ECF No. 34-14; Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."); *Nanda*, 2017 WL 9485717, at *3. Accordingly, Plaintiff has demonstrated a *prima facie* entitlement to foreclose, and—in the absence of any dispute of material fact apparent from the record—Plaintiff is entitled to summary judgment.

Defendant's response in opposition is both untimely and incomplete. Defendant's opposition papers were filed outside the window permitted by the Local Rules, *see* Loc. R. Civ. P. 7(b)(2)(A), and they are comprised of only an Affidavit in Opposition (ECF No. 36) and Declaration of Counsel (ECF No. 37) with corresponding exhibits—they do not include a memorandum of law[4] or opposing statement of facts, both of which are required by the Local Rules, *see* Loc. R. Civ. P. 7(a)(2), 56(a)(2). As a result of those defects, Defendant's arguments appear solely in the Declaration of Counsel—once again, in violation of the Local Rules. *See* Loc. R. Civ. P. 7(a)(3). Taken together, these errors are enough to deem Plaintiff's undisputed facts

---

[4] The Court did receive a letter from Defendant on November 28, 2016 asking the Court to "dispense with the requirement of a Memorandum of Law" because Defendant "d[id] not believe that the case turn[ed] on any fine point of the law," and, accordingly, any such memorandum would "merely affirm general principles," such as the standard for summary judgment. ECF No. 79.

admitted and reject Defendant's arguments advanced in opposition. *See* Loc. R. Civ. P. 7(a)(2)(A), 7(a)(3), 56(a)(2).

### B. Defendant's Arguments

Even on the merits, though, Defendant's arguments (presented through its Declaration of Counsel) would fail as a matter of law. Additionally, although Defendant claims to have defenses that are "highly factual in nature," ECF No. 79, the Court sees no genuine dispute of material fact. Defendant does not seem to dispute its obligations or default—instead, Defendant appears to challenge Plaintiff's standing by questioning the validity of certain operative documents. *See, e.g.*, ECF No. 37, at 6 ("Plaintiff attempts to make much of . . . Defendant's default in this matter. It is respectfully pointed out that the default makes no difference to . . . Plaintiff if . . . Plaintiff has no standing to sue as a Note holder in this action."). Notably, Defendant fails to cite a single case to support its arguments in opposition—perhaps because the Declaration submitted is not, in fact, a memorandum of law. *See id.* Instead, Defendant simply asserts, without further support, that various "defects" in the Allonge and Mortgage Assignment render Plaintiff without standing to maintain this action. *See id.*

Typically, when the issue of standing is raised by the defendant, the plaintiff must then demonstrate its standing to foreclose. *See, e.g.*, *CIT Bank N.A. v. Elliott*, No. 15-CV-4395 (JS) (ARL), 2018 WL 1701947, at *6 (E.D.N.Y. Mar. 31, 2018). However, as Plaintiff argues, Defendant's opposition is both incomplete and untimely. Because the Court is only addressing Defendant's arguments in the interest of thoroughness and clarity regarding the underlying merits, the Court briefly discusses the issue of standing to provide context for Defendant's arguments.

Defendant claims that, "if the Assignment and Allonge are defective – in fact, if either of them is defective – the Plaintiff lacks standing as a current holder of the Note to maintain the

instant action." ECF No. 37, at 5. As a general matter, Defendant's proposition is incorrect: Plaintiff may have standing as either the holder *or* the assignee of the Note—it need not be both. *See, e.g.*, *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 222 (2d Cir. 2016) (per curiam) ("Under New York law, '[a] plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note.' 'Either a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident.'" (quoting *Wells Fargo Bank, N.A. v. Rooney*, 19 N.Y.S.3d 543, 544 (N.Y. App. Div. 2015), and then *U.S. Bank, N.A. v. Collymore*, 890 N.Y.S.2d 578, 580 (N.Y. App. Div. 2009)) (alteration in original)); *CIT Bank, N.A. v. Howard*, No. 14-CV-7470, 2018 WL 3014815, at *7–8 (E.D.N.Y. June 15, 2018) (recognizing that being the assignee of a note and being the holder of a note constitute "independent ground[s] for . . . standing").

"Holder status is established where the plaintiff possesses a note that, on its face or by allonge, contains an indorsement in blank or bears a special indorsement payable to the order of the plaintiff." *Wells Fargo Bank, NA v. Ostiguy*, 8 N.Y.S.3d 669, 671 (N.Y. App. Div. 2015), *quoted in E. Sav. Bank, FSB v. Thompson*, 631 F. App'x 13, 15 (2d Cir. 2015) (summary order). Here, the Allonge attached to the Note contains a special indorsement payable to Plaintiff. *See* ECF No. 34-2, at 14. In addition, from the outset of this case, Plaintiff claimed to possess the original Note,[5] *see* ECF No. 1, at 2, 5—an assertion that Defendant has not contested. To that end, Plaintiff attached a copy of the Note as an exhibit to its Complaint. *See* ECF No. 1-2; *Gustavia*

---

[5] Plaintiff has not submitted an affidavit specifically affirming that it received the Note by physical delivery prior to filing its Complaint, which would be more definitive. *Cf. Melina*, 827 F.3d at 223. However, Defendant does not appear to contest Plaintiff's possession—instead, it asserts various defects within the documents themselves.

*Home, LLC v. Owusu*, No. 16-CV-5709 (RA), 2018 WL 2122818, at *5 (S.D.N.Y. May 8, 2018) (citing *Deutsche Bank Nat'l Trust Co. v. Umeh*, 41 N.Y.S.3d 882 (N.Y. App. Div. 2016), for the proposition that "having the note attached to the complaint [i]s sufficient evidence that it was in plaintiff's possession at the time of the commencement of the action"); *see also Umeh*, 41 N.Y.S.3d at 882; *Nationstar Mortg., LLC v. Catizone*, 9 N.Y.S.3d 315, 316 (N.Y. App. Div. 2015).

On a separate front, a note can be assigned "by a written reference to the note within the mortgage assignment." *Howard*, 2018 WL 3014815, at *8 (quoting *U.S. Bank, N.A. v. Squadron VCD, LLC*, No. 10-CV-5484, 2011 WL 4582484, at *7 (S.D.N.Y. Oct. 3, 2011)). Here, the Mortgage Assignment stated that Original Lender "does hereby sell, assign, grant, transfer, set over and convey" the Mortgage to Plaintiff "[t]ogether with the Note, bond or other obligations described in said Mortgage and secured thereby." ECF No. 34-5, at 5–6. Based on that language, Plaintiff would additionally have standing to bring this action as assignee of the Note. *See Howard*, 2018 WL 3014815, at *8; *Squadron*, 2011 WL 4582484, at *7.

### 1. Purported Defects in Allonge

Defendant claims that the Allonge's lack of a corporate seal, date, and notarization renders it invalid. *See* ECF No. 37, at 3–4. But "the fact that an allonge is undated does not undermine its validity," *CIT Bank, N.A. v. Metcalfe*, No. 15-CV-1829 (MKB) (JO), 2017 WL 3841843, at *3 (E.D.N.Y. Aug. 17, 2017), *adopted*, 2017 WL 3841852 (E.D.N.Y. Sept. 1, 2017), nor must an allonge be notarized to be valid, *e.g.*, *Bank of Am., N.A. v. 3301 Atl., LLC*, No. 10-CV-5204 (FB), 2012 WL 2529196, at *8 (E.D.N.Y. June 29, 2012) (indicating that neither a date nor notarization is required). Likewise, the lack of a corporate seal would not invalidate the Allonge. *See* N.Y. Gen. Constr. Law § 44-a (McKinney 2018); *cf.* N.Y. Bus. Corp. Law § 107 (McKinney 2018) (instructing that a corporate seal simply serves as *prima facie* evidence that a written instrument

was executed by authority of a corporation). The Note is specially indorsed to Plaintiff, and, as long as Plaintiff possessed the Note when it filed the Complaint, it has the requisite standing. *See, e.g.*, *Metcalfe*, 2017 WL 3841843, at *3. Thus, as a matter of law, Defendant's allegations regarding the Allonge would prove inconsequential to the transfer of the Note and Plaintiff's status (and standing) as the holder.

### 2. Purported Invalidity of Mortgage Assignment

Defendant also contests the validity of the Mortgage Assignment by observing that, when the Mortgage Assignment was attached to the Complaint, it was missing a signature page.[6] ECF No. 37, at 3. From there, Defendant speculates that, in the absence of a signature page, the accompanying notarization may have been improperly furnished. *Id.* Defendant additionally claims that "there has been no substitution or change in the documentation annexed to the Complaint since this action began." *Id.*

Per the record, that claim is simply false—the copy of the Mortgage Assignment attached to Plaintiff's Motion for Summary Judgment clearly includes a signature page with the signature of "Randall L. Stokes." ECF No. 34-5, at 7. Moreover, prior to moving for summary judgment, Plaintiff had already clarified that the copy attached to the Complaint was missing the signature page due only to a "clerical error" in filing. *See* ECF No. 28 (July 29, 2016 Declaration of Richard O'Halloran). Accordingly, Defendant's allegation that the Mortgage Assignment was "unexecuted," and, therefore, may have been invalid, carries no weight. *See* ECF No. 37, at 3. Moreover, the Court notes that claimed defects in the Mortgage Assignment would not affect Plaintiff's independent source of standing as holder of the Note.

---

[6] While the initial copy of the Mortgage Assignment attached to the Complaint was, in fact, missing a signature page, the Court notes that, even in that filing, there is an evident gap in the liber and page numbers. *See* ECF No. 1-6, at 6–7 (skipping from Liber 40: Page 306 to Liber 40: Page 308).

12

In sum, based on Plaintiff's *prima facie* showing and the absence of any genuine dispute of material fact, and given the untimeliness and noncompliance of Defendant's submissions (which, in any event, would not assert meritorious arguments), Plaintiff's Motion for Summary Judgment as to Defendant's liability is GRANTED.

Within **30 days** of the issuance of this Decision and Order, Plaintiff shall submit affidavits and supporting documentation sufficient for the Court to determine the total amount owed by Defendant, as well as affidavits and supporting documentation for any attorney's fees and costs to which Plaintiff maintains it is entitled. Within that same time period, Plaintiff shall also file a proposed judgment of foreclosure and sale and an application for the appointment of a referee to effectuate the sale.

## II. Motion to Compel and for Sanctions

Plaintiff's Motion to Compel seeks organizational documents related to the earlier jurisdictional discovery, and the accompanying Motion for Sanctions requests an award of expenses and attorney's fees based on Defendant's "failure to cooperate through the discovery process." ECF No. 55, at 8. For the reasons provided *infra*, Plaintiff's Motion to Compel (ECF No. 53) is DENIED AS MOOT, but Plaintiff is entitled to its related expenses, including attorney's fees. The Court declines to impose additional sanctions against Defendant, and—accordingly—Plaintiff's Motion for Sanctions (ECF No. 53) is DENIED.

### A. Motion to Compel

Federal Rule of Civil Procedure 37(a)(3)(B) provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if, among other things, "a party fails to produce documents . . . as requested under Rule 34." *See* Fed. R. Civ. P.

37(a)(3)(B)(iii). The necessary "failure" encompasses both non-responsiveness and "an evasive or incomplete disclosure, answer, or response." *See* Fed. R. Civ. P. 37(a)(4).

Plaintiff's Second Set of Requests of Documents requested the production of "any and all documents reflecting, evidencing, and/or relating to . . . Defendant's organizational documents" and "the LLHC Enterprises, LLC's organizational documents." *See* ECF No. 54-3, at 6. In response, defense counsel complained that he was "getting nickel-and-dimed with constant discovery requests," and that Plaintiff's counsel should "figure out what [they] need[ed]" so that it could be "discuss[ed] all in one place—not spread over various demands." *See* ECF No. 54-4, at 2. After counsel scheduled a teleconference on the matter, defense counsel suggested that Plaintiff's counsel "withdr[a]w the . . . 2nd Request For Production of Documents, and then send . . . a discovery demand containing what you really want to know." ECF No. 54-5, at 5. Thereafter, Plaintiff noticed a Rule 30(b)(6) deposition to obtain the requested information and documents. *See* ECF No. 54-5.

That deposition, originally scheduled for February 15, 2018, *see id.* at 3, was adjourned to March 7, 2018 to accommodate Defendant's availability, *see* ECF No. 54, at 2. When the documents were not produced in their entirety at the deposition, Plaintiff's counsel sent defense counsel a number of emails following up on their production, asking that the documents be provided "as soon as possible" and referencing the "good faith effort to work to resolve th[e] discovery dispute without motion practice." *See* ECF No. 54-7, at 2–6. Although defense counsel sent some of the requested documents, and Plaintiff's counsel informed him that others were still missing, *see id.* at 4, the remaining documents were not provided until over three weeks after the Motion to Compel was filed, *see* ECF No. 60.

In its untimely response, Defendant indicates that it had apparently misplaced the documents in a different file. *See id.* at 2–3. By Defendant's account, it "unexpectedly found the subject document" in the folder for LLHC Mobile Homes, LLC, which was next to the correct file. *Id.* at 2. Before finding the documents, Defendant had apparently reached out to the attorney involved in the formation of the relevant organizations and searched its own files, but it had not thought to look in the folder for LLHC Mobile Homes, LLC. *See id.* Defense counsel maintains that "to request sanctions in order to obtain a document that had eluded diligent search and only been fortuitously misfiled in the records of an LLC not part of this litigation-a record irrelevant to what . . . Plaintiff seeks to prove, anyway-is a bit beyond the pale." ECF No. 62, at 2. The Court granted Defendant's request to file a sur-reply in opposition to Plaintiff's Motion, and defense counsel now argues that "Plaintiff's motion is . . . moot" because Plaintiff ultimately received the requested documents, and he explains that his untimeliness was attributable to his strained communications with Defendant. *See* ECF No. 67, at 1–2.

Given the subsequent production of the requested organizational documents (and, as discussed *supra*, the Court's satisfaction that complete diversity exists), the Motion to Compel is, in fact, moot—but that does not end the Court's inquiry.

1. **Expenses Related to Motion to Compel and Corresponding Attorney's Fees**

If the discovery sought "is provided after the motion was filed," then "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). The only enumerated exceptions to ordering that award are: (i) if "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action"; (ii) if

15

"the opposing party's nondisclosure, response, or objection was substantially justified"; or (iii) if "other circumstances make an award of expenses unjust." *See id.*

None of those exceptions apply to these circumstances. As detailed *supra*, Plaintiff's counsel repeatedly attempted—over the course of months—to obtain the requested documents from defense counsel before filing the Motion to Compel. Indeed, Defendant does not appear to question the extent or nature of Plaintiff's efforts.

With respect to the rationale for Defendant's refusal, defense counsel complained about being "nickel-and-dimed" with requests and suggested that Plaintiff did not actually need the documents it was requesting—an argument echoed in defense counsel's response to Plaintiff's Motion. *See* ECF No. 62, at 2. "Conduct is substantially justified if there was a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action." *Klein v. Torrey Point Grp., LLC*, 979 F. Supp. 2d 417, 442 (S.D.N.Y. 2013) (quoting *Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*, 273 F.R.D. 372, 377 (S.D.N.Y. 2011)). In that vein, an argument as to relevancy may provide substantial justification for refusing to produce documents "unless such a position 'involves an unreasonable, frivolous or completely unsupportable reading of the law.'" *Id.* (quoting *Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp.*, 240 F.R.D. 78, 87 (S.D.N.Y. 2006)).

Here, however, defense counsel has provided no insight regarding the legal basis for his refusal and the suggested lack of relevancy.[7] Indeed, in the Court's estimation, his responses seem to turn upon a fundamental misunderstanding of the citizenship of LLCs—notwithstanding the Court's explanations and well-established law. *Cf. Roth v. 2810026 Can. Ltd. Ltd.*, Nos. 14-CV-

---

[7] To be clear: the records Plaintiff requested were *directly* relevant to what this Court needed to know regarding subject-matter jurisdiction. In fact, the Court cited the organizational documents in its June 2018 Order to Show Cause. *See* ECF No. 71. The question is not, however, whether Defendant was ultimately correct—it is whether Defendant's position was "without substance." *See Klein*, 979 F. Supp. 2d at 442.

901A(F), 15-CV-374A(F), 2016 WL 5745162, at *2 (W.D.N.Y. Oct. 4, 2016) ("Defendants point neither to unsettled caselaw . . . nor to any circumstances showing [their] refusal was based on factors beyond [their] control."). Accordingly, the Court cannot discern an objectively reasonable basis on which defense counsel would contest the relevancy of the requested documents, and—as a result—cannot determine that his noncompliance was substantially justified.

As for the claimed misplacement of the records, Plaintiff contends that "Defendant took absolutely no initiative in tracking down the requisite documents which were in its possession," forcing Plaintiff to "constantly follow[] up." ECF No. 63, at 6. Defendant's disagreement over its efforts to locate the documents does not explain defense counsel's earlier obstinance and the piecemeal production of the documents requested. Practically speaking, the Court also questions how a document in a neighboring file with a near-identical name might have eluded a purportedly "diligent" search. To that end, Defendant offers no further reasons why an award of expenses related to Plaintiff's Motion to Compel would be unjust. Accordingly, Plaintiff is entitled to its expenses, including attorney's fees, incurred in making its Motion to Compel.

Within **30 days** of the issuance of this Decision and Order, Plaintiff shall submit supporting documentation as to the expenses it incurred in conjunction with its Motion to Compel, including attorney's fees, and Plaintiff shall additionally address whether Defendant, defense counsel, or both should be held responsible for the award. *See* Fed. R. Civ. P. 37(a)(5)(A) (requiring "the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees").

17

**B.     Motion for Sanctions**

Plaintiff also moves for sanctions against Defendant for "Defendant's failure to cooperate through the [jurisdictional] discovery process." ECF No. 55, at 8. To that end, Plaintiff seeks an award of the resulting "expenses and attorneys' fees incurred," which "include the: 1) attorneys' fees for the deposition [of Jeffrey Luellen] and this motion; 2) charges for stenographer services; 3) transcript charges; and 4) the costs related to the additional follow up required." *Id.* at 9.

Federal Rule of Civil Procedure 37(b)(2)(A) instructs that, "[i]f a party . . . fails to obey an order to provide or permit discovery," the Court may impose "further just orders." Alternatively—or additionally—the Court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Notably, however, "[a] court order directing compliance with discovery requests is a required predicate to Rule 37(b) sanctions." *Joint Stock Co. Channel One Russ. Worldwide v. Infomir, LLC*, No. 16-CV-1318 (GBD) (BCM), 2017 WL 3671036, at *18 (S.D.N.Y. July 18, 2017); *see also Salahuddin v. Harris*, 782 F.2d 1127, 1131 (2d Cir. 1986) ("The plain language of Rule 37(b) requires that a court order be in effect before sanctions are imposed . . . .").

Plaintiff does not cite a specific order that Defendant allegedly violated—instead, it argues that Defendant's failure "frustrated . . . Plaintiff's ability to respond to the Court's Order to Show Cause." ECF No. 55, at 8. But the Court's October 2017 Order to Show Cause directed Plaintiff to demonstrate Defendant's citizenship, and the subsequent November 2017 Text Order simply permitted Plaintiff to engage in limited jurisdictional discovery regarding the question of citizenship—neither was "a clearly articulated order of the [C]ourt requiring specified discovery" of Defendant. *See Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991).

18

Instead—as in *Joint Stock*—the Court merely "granted [the] authority to conduct . . . .jurisdictional discovery." *See Joint Stock*, 2017 WL 3671036, at *22 ("The . . . Order did not, however, compel or otherwise direct [the defendant] to produce any particular documents (in response to demands not yet served) or to provide any other specified discovery."); *see also, e.g.*, *Salahuddin*, 782 F.2d at 1131–32. Accordingly, the Court will not impose additional sanctions against Defendant, and Plaintiff's Motion for Sanctions is therefore DENIED.

**CONCLUSION**

For the reasons stated, Plaintiff's Motion for Summary Judgment (ECF No. 34) is GRANTED; Plaintiff's Motion to Compel (ECF No. 53) is DENIED AS MOOT, but Plaintiff is entitled to its related expenses, including attorney's fees; and Plaintiff's Motion for Sanctions (ECF No. 53) is DENIED. It is hereby ORDERED that, within **30 days** of the issuance of this Decision and Order:

Plaintiff shall submit affidavits and supporting documentation sufficient for the Court to determine the total amount owed by Defendant, as well as affidavits and supporting documentation for any attorney's fees and costs to which Plaintiff claims to be entitled;

Plaintiff shall submit a proposed judgment of foreclosure and sale and an application for the appointment of a referee to effectuate the sale; and

Plaintiff shall submit affidavits and supporting documentation regarding its expenses incurred in connection with its Motion to Compel, including attorney's fees, and shall also address the corresponding issue of responsibility as between Defendant and defense counsel.

IT IS SO ORDERED.

Dated: September 13, 2018
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court